IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TROY VANCURTIS ELLIS                                                                    PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:11cv749-LRA

MAJOR MARY RUSHING, et al.                                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff Troy Vancurtis Ellis is a state inmate who was formerly housed at the Hinds County Detention Center (HCDC) in Raymond, Mississippi, as a pretrial detainee. He filed this § 1983 action alleging unconstitutional conditions at the jail. Presently before the Court is the motion of Defendants for summary judgment. Having considered the motion and the competent summary judgment evidence, the Court concludes that the motion should be granted in part and denied in part.

A portion of Plaintiff's claims concern the period from approximately October 11, 2011, to October 25, 2011, when he was housed as a pretrial detainee in the "holding tank" at HCDC. Plaintiff describes the holding tank as severely overcrowded, with some 20 other inmates housed there. According to Plaintiff, he had to sleep on the concrete floor the entire time, and the center of the floor had a drain with sewage back-up; the entire cell was dirty. He was unable to shower for eight or nine days, and when he finally was allowed to go to the shower area, it was filthy and contained about a foot of standing water in it. The water was nasty and appeared to have human waste in it, along with broken glass. He was only allowed to shower about four times during the period he was in the holding tank. Somewhere around day 12 in the tank, an inmate who had hepatitis A, B, & C, as well as cancer, was moved into the cell. Although he was moved out of the

cell after complaints were made by other inmates, the cell was not disinfected after the sick inmate was transferred out.

On or about October 25, 2011, Plaintiff was moved and placed in housing Pod A2. According to Plaintiff, the conditions there also placed his health and life in danger. The showers were not clean and had broken glass from a light fixture on the floor for several days. The bottom shower light fixture had electrical wires hanging out. The lights in the showers did not work. Plaintiff also charges that the eating conditions put his health and life in danger because other inmates passed out the food and drinks while Plaintiff was behind the cell door. The inmates could have put something dangerous in his food without his knowledge. Plus, passing his food tray under the filthy door could contaminate his food.

Plaintiff also requested to have a TB shot but was not given one until January 25, 2012. He further testified that the cells' doors in the pod could be popped by other inmates at any time, and he constantly remained in fear due to the threat caused by the non-working cell locks. He was never personally assaulted due to the locks, but other inmates in his pod were assaulted after locks were popped; this increased his constant fear for his life. He also complains that Sergeant Shepperd was on duty "a couple of days," and she taped paper over the window and door of the holding tank for about eight hours. Nothing happened, but it posed a security issue, since officials could not see what was going on in the cell.

Plaintiff testified that he was never actually assaulted by another inmate; however, he lived in constant fear that something would happen to him. Plaintiff was allowed to

amend his Complaint by letter motions dated May 17, 2012, June 9, 2012, and August 9, 2012, outlining additional claims relating to his confinement at the HCDC.  These included the charge that on April 24, 2012, Plaintiff was pepper sprayed by a guard following an altercation with two other inmates.  On May 17, 2012, he was struck by another inmate while showering.  On July 14, 2012, he was struck in the head with a plate from above the door and was denied medical care [25].

As to unserved Captain Ogden Wilburn [named as Willburn Otis in the Complaint], Plaintiff contends that he complained to him about the conditions in booking; Captain Wilburn acted like he did not care and did nothing.  As to Defendant Sgt. Irene Shepperd, Plaintiff contends that she was the officer who taped up the windows of the holding cell, endangering his safety.  Defendant Officer Robinson refused to give him blankets.  Defendant Sgt. Brandy Williams knew Plaintiff was having to sleep on the floor but did nothing.  Defendant Major Mary Rushing was in charge of the facility.  Plaintiff never personally talked to her, but he contends she was responsible for the conditions.

Plaintiff was convicted of the charges against him and is now incarcerated in the custody of the Mississippi Department of Corrections [MDOC] in the Kemper-Neshoba County Correctional Facility in Dekalb, Mississippi.  Because he was a pretrial detainee during his stay in the HCDC, he had a clearly established constitutional right to be free from punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  A detainee's claim regarding the conditions of his confinement are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which

3

applies only to sentenced inmates.  *Bell,* 441 U.S. at 535; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).

In a conditions of confinement case, the "harm" is caused by the condition itself, such as when inadequate food, heating, or sanitary conditions themselves constitute miserable conditions.  *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997);  *Duvall v. Dallas Cnty.,* 631 F.3d 203, 206 (5th Cir. 2011) (the conditions of a pretrial detainees's detention may be so harmful or dangerous that the conditions themselves may amount to impermissible "punishment.").   A constitutional violation may occur when the complained of condition results in "serious deficiencies" in providing for the detainee's "basic human needs."  *Shepherd v. Dallas Cnty.,* 591 F.3d 445, 454  (5th Cir. 2009).

Constitutional challenges may be brought by a pretrial detainee under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission."  *Id.* at 452.  In this case, Plaintiff's claims primarily focus on the conditions of his confinement rather than an episodic act or acts.[1]  Therefore, under the law he must prove the "existence of an identifiable intended condition or practice that was not reasonably related to a legitimate governmental objective."  *Id.* at 455.  The practice may be an explicit policy, such as a written rule, or it may also be manifested by a *de facto*

---

[1] However, several of Plaintiff's claims are episodic in nature: the April 12, 2012, pepper spray; the May 1, 2012, assault in the shower; the July 13, 2012, head injury; the covering of the windows; and, the refusal to provide blankets. Plaintiff charges that together his claims violate the Constitution. Determining whether to classify a claim as a conditions-of-confinement claim or an "episodic acts" claim is not always straightforward. *See, e.g., Scott v. Moore,* 114 F.3d 51, 5354 (5th Cir. 1997) (en banc) (holding that the "episodic act" branch of the doctrine governed a detainee's claim arising out of sexual assault by a guard); *id.* at 56 (Wisdom, J., dissenting) (the assault was traceable to "regular and systematic" staffing policies that were the "antithesis of episodic").

policy. The latter must be by "...acts or omissions sufficiently extended or pervasive ... to prove an intended condition or practice." *Id.* In such a case, the intent to punish may be presumed. *Id.* at 452.

The Court concludes that Plaintiff's sworn statements concerning the conditions in the holding tank for his 14-day stay and his time in A-2 pod are sufficient to create a factual issue as to whether those conditions constituted punishment and whether they resulted in serious deficiencies in the provision of Plaintiff's basic human needs. Plaintiff testified that he did not receive any actual physical injuries due to the conditions about which he complains. Yet he did constantly fear for his life. A prisoner need not show "serious current symptoms" or an actual injury to state a valid claim-- it is enough that the prison conditions "pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 22 (1993). Plaintiff here suffered no real physical injury. However, the Court does find that there is a factual dispute as to whether the constant fear for one's safety due to unsecured cells and threats of violence, as well as dangerously crowded and filthy conditions, constituted "punishment" and practices so pervasive that they became the actual policy of HCDC (or an intended condition or practice).

Plaintiff has alleged claims regarding his pretrial detention in the holding cell against Sgt. Irene Shepperd, Sgt. Brandy Williams, Officer Robinson, and unserved Defendant Captain Ogden Wilburn [or "Willburn Otis"]. For the reasons set forth in their Memorandum, the Court finds that they are entitled to summary judgment on the basis of qualified immunity. Plaintiff's allegations against them are limited to having complained to

5

them about conditions or because their alleged episodic acts [such as covering the window and refusing to provide blankets and merely knowing that Plaintiff slept on the floor]--- these claims simply do not rise to the level of constitutional violations, and qualified immunity protects them from suit.

Plaintiff has alleged that during the relevant time period, Defendant Major Rushing was the administrator of the detention center.  If Plaintiff is able to establish that there was a *de facto* policy of housing pretrial detainees under the conditions he describes, a factual issue remains as to whether Major Rushing could be liable. Therefore, the motion will be denied as to Plaintiff's claims against Major Rushing concerning the conditions in the holding tank and in A-2 pod.  Questions of fact must be determined prior to a decision on whether or not supervisory liability could be applicable under the circumstances. Supervisory liability may be established without direct participation in the alleged events "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights, and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).[2]

---

[2] If a plaintiff properly states a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating an individual jail official's actual intent to punish because intent may be inferred.  *Shepherd,* 591 F.3d at 452.  However, proving a pattern of acts or omissions sufficient to establish liability is a "heavy burden, one that has rarely been met in our caselaw."  *Id.*

Therefore, it is hereby ordered that the motion is **denied** as to Plaintiff's claims against Defendant Rushing regarding his two-week period in the holding tank and during his stay in A-2 Pod.[3]  The motion is **granted** as to his claims against the remaining Defendants, and they are hereby dismissed.

Defendants' Motion to Strike [41] is **granted** for the reasons set forth by the movants.

IT IS FURTHER ORDERED that the Clerk of the Court alter the docket to reflect that Defendant Rushing is the sole remaining Defendant.  The case shall be set for trial in the near future.

So ordered, this the 27th day of March, 2014.

                              /s/ Linda R. Anderson
                              UNITED STATES MAGISTRATE JUDGE

---

[3] Except for the evidence relating to amendments previously allowed by the Court, no claims or evidence will be considered at the trial which occurred after the date Plaintiff filed his Complaint, December 7, 2011.