IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TROY VANCURTIS ELLIS                                                        PLAINTIFF

VS.                                                  CIVIL ACTION NO. 3:11cv749-LRA

MAJOR MARY RUSHING                                                       DEFENDANT

MEMORANDUM OPINION AND ORDER

This case came before the Court for trial on January 20, 2015.  Plaintiff Troy

Vancurtis Ellis testified on his own behalf and presented the testimony of his witnesses,

inmates Sylvester Wright, Jr., and Ervin Jones.  All Defendants other than Major Mary

Rushing were previously dismissed by Memorandum Opinion and Order [45] entered on

March 27, 2014.  Defendant Rushing testified on her own behalf and offered into

evidence the Policy and Procedures Manual of the Hinds County Detention Center

(HCDF) [59]; General Order 92-01-17 of the Hinds County Sheriff's Office [60], and the

Inmate Records of Ellis [61].

 Ellis is a state inmate who was formerly housed at the HCDF in Raymond,

Mississippi, as a pretrial detainee.  He filed this § 1983 action alleging unconstitutional

conditions at the jail, both while he was held in the "holding tank" for approximately 16

days in October 2011, and while he was housed in Pod A2 from October 2011 until

October 2014.

**Evidence Presented**

Plaintiff testified regarding the facts upon which his Complaint is based:

> When I arrived in the HDCF the things I brought to light was
> the inhumane conditions of being in the booking holding cell
> for the excess of 16 days, sleeping on concrete floors, being
> subject to raw sewage coming out of the center of the floor.
> And when I got to A2 pod, being able — well, witnessing
> inmates pop out of their cells, doing violent things to other
> inmates and like I say, making it known to the staff and they
> did nothing.  So through constant requests and grievances, I
> filed this 1983.

Regarding what Defendant Rushing did, Plaintiff testified:

> Well, Ms. Rushing in her capacity as being over the facility
> had full knowledge of the incidents and yet did nothing.  Her
> and her subordinates.

Plaintiff also testified that 20 other inmates were in the holding tank with him.  When

testifying regarding his claims in A2 pod, Plaintiff testified:

> Popping cell doors, making threats, acts of violence, taking
> other inmates' canteen, just doing all sorts of things.  And the
> deputies under Mrs. Rushing's administration did nothing.
> They broke policy.  You know, they make and break policy as
> they choose. ...
> ...
>
> It's Major Rushing and her subordinates went against their
> very policy that they're sworn — that's their sworn duty to
> take.

Plaintiff also testified that he never once spoke with Defendant Rushing about the

conditions in HCDF.  When he tried, he was told not to bother her; the window on the

door was taped over so he could not see when officers were present.   Ellis did not testify

2

as to any injuries he sustained as a result of the conditions he described, nor did he present any medical evidence.  Ellis only provided the above quoted testimony as the factual basis for his claims against Defendant Rushing, even after the Court asked him to further explain the facts upon which he relied.

Ellis's witnesses, Jones and Wright, also testified regarding the conditions at the HCDF.  Wright was housed at HCDF after his arrest on September 24, 2011, and he left HCDF on October 23, 2014.  He was booked and held in the holding tank for about 7-10 days when he first arrived at the jail.  He had to sleep on a blanket on the concrete floor while he was there and was housed with about "15 or more" inmates.  He was then transferred to A-2 pod.  According to Wright, the lights were off in the cells and in the showers, and electrical live wiring hung down from the ceilings.  He brought this to the attention of the housing deputy but nothing was done.  The inmates could pop the locks of the cell doors, and he feared for his safety.  Wright was fed his meals by trays being slid under the cell door, making him feel like an animal.  The entire pod was unsanitary.  Wright admitted that he did file a lawsuit about his medical care while housed at HCDF, but he never filed a lawsuit about the food trays, or the popping locks, or any other conditions at HCDF.

Jones was housed at HCDF from January 15, 2010, until July 30, 2012.  He testified that the holding tank was overcrowded, unsanitary, and he had to sleep on the concrete floor.  He saw sewage coming out of the center of the floor in the holding cell.  He was housed there for about 16 days.  He asked the staff to do something about the

conditions, but was told there was nothing they could do.  He was sent to A-2 pod thereafter.  The living conditions were also bad there.  His meals were served by trays slid under the doors, and the food got dirty and dusty.  Other inmates could pop the locks on the doors, and he witnessed inmates committing violence on other inmates as a result. Inmates would pop the locks and enter someone else's cell and steal their canteen or assault them.  Jones testified that he was in constant fear of violence.   Jones never filed a written grievance but he made verbal claims to staff members on duty at the time.  Jones testified that Defendant Rushing was over the facility and had full knowledge of the poor conditions; yet, she did nothing.  Her staff knew about the conditions, and she had briefings and a grievance system; Jones contends that she had to have known about the conditions.

Neither Ellis or Jones or Wright testified that they were injured as a result of their stay in the HCDF.  Ellis put on no proof whatsoever of any injury that resulted from his conditions, even a *de minimus* injury.

Defendant Rushing testified that she was the jail administrator over the HCDF during the period Ellis was housed there, and her rank was Major.  She testified regarding the conditions at the HCDF, denying that there were any cells with sewage flowing from the floor.  A site maintenance crew was there, and she would have submitted a work order and had the problem fixed.  Maintenance would have responded within an hour or so.  If she knew about any problems at the jail, she submitted work orders, and maintenance quickly responded.  According to Defendant Rushing, no inmate

4

was housed in the holding cell over 2-3 days, and usually only for 8-12 hours.  She never saw an inmate sleeping on the floor, although some did lie on mattresses placed on concrete benches.  She did not see over 10-12 prisoners in a holding cell.  Defendant testified that there was a supply room in the booking area, and she had no problem getting cleaning supplies when she requested it.  Officers were supposed to spray the showers down with cleaning products two-three times a week, and sometimes she ordered that the cells be cleaned even more often.  The jail had a cleaning crew, with officers assigned to the crew; the cleaning cart rotated from pod to pod.  Inmates were provided a time to shower  at least three times per week.

Defendant testified regarding the Policies and Procedures of the HCDF, as well as portions of the General Orders of the Hinds County Sheriff's Office, which were admitted into evidence.  These provided for discipline of her staff and other policies.  Her expectations were that the staff would carry out the policies, and she would discipline any officers who did not follow the applicable policies in place.  She testified that they had had problems with the locks on the cell doors, and a Mr. Robert Nelson had been hired to retrofit the locks and doors.  This process began in early 2010, and Defendant Rushing knows of no problems with the locks after Mr. Nelson put the retrofits in place.  The officers were trained about setting the tracks of the doors; as long as the officers followed procedures and properly locked the doors, inmates could not pop the locks after the corrections were made by Mr. Nelson.  Defendant testified that she knew nothing about wires hanging from the ceilings in the showers and cells.  Had she seen anything like this,

5

she would have had maintenance correct the problems.  She testified that she made rounds in the jail every day and talked to the officers frequently.  She was open to complaints, and inmates often talked to her.

### Application of the Law Regarding Conditions of Confinement

Pretrial detainees have a due process right not to be subjected to jail conditions that constitute punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  "Punishment"  may be "the manifestation of an explicit policy or restriction."  *Shepherd v. Dallas Cnty.,* 591 F.3d 445, 453  (5th Cir. 2009).   It can also be manifested by a *de facto* policy if a pattern of conduct or condition is sufficiently extended or pervasive such that intent to punish may be presumed.  *Id.* at 452.  Furthermore, the punishment is impermissible only if it bears no reasonable relationship to a legitimate governmental interest and if it causes a violation of a detainee's constitutional rights.  *Duvall v. Dallas Cnty.,* 631 F.3d 203, 207 (5th Cir. 2011).   A constitutional violation occurs when the complained of condition results in "serious deficiencies" in providing for the detainee's "basic human needs."  *Shepherd*, 591 F.3d  at 454.

Yet, the Constitution does not mandate comfortable prisons.  *Vega v. Parsley*, 700 F.Supp. 879, 883 (W.D. Tex. 1988).  The Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience.  *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).        Plaintiff is required to show at least some form of physical injury in

6

order to proceed with a conditions of confinement claim filed under the Prison Litigation Reform Act. *Harper v. Showers,* 174 F.3d 716, 720 (5th Cir. 1999).   *See also Alexander v. Tippah County, Miss.,* 351 F.3d 626, 631 (5th Cir. 2003) (prisoner must establish a physical injury that is more than *de minimis*).   Ellis has failed to allege at trial that he suffered from such an injury.

The Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that the conditions in the HCDF were so deficient as to him to constitute an intent to punish him.  Further, he set forth no evidence showing a *de facto* policy at the jail wherein an intent to punish could be presumed.   Ellis did receive adequate food and clothing while at HCDF; he had access to medical care and medical personnel.  Ellis put on no proof of severe weight loss or any other medical problems that are connected to his confinement at HCDF.  Even accepting Ellis's testimony as true regarding the conditions to which he was exposed, the Court finds that the conditions were not so severe as to constitute actual punishment by Defendant Rushing. The evidence fails to show that Ellis's conditions of confinement resulted in serious deficiencies in the provision of his basic human needs.

Ellis concedes that he never spoke to Defendant Rushing about the conditions but charges that she was responsible because she was "over" the jail and her subordinates knew about the problems.  Supervisory liability may be established without direct participation in the alleged events "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights, and is the moving force of

the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  Ellis

has failed to present sufficient proof of such a policy.

Ellis has had little association with Defendant Rushing, and he confirms that he

has never actually spoken to her.  By prior motion, Defendant Rushing contended that she

was entitled to qualified immunity, and the Court agrees.  No liability has been

established against  Defendant Rushing, in either her individual or official capacity, under

the evidence presented in this case.

### Conclusion

As stated, the Court finds that Plaintiff has failed to carry his burden of proof as to

his contention that his rights under the United States Constitution were violated due to the

conditions in which he was housed at the Hinds County Detention Facility, and this case

must be dismissed with prejudice.

IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with

prejudice, and Final Judgment shall be entered on this date in favor of Defendant Mary

Rushing and all other Defendants previously dismissed.

SO ORDERED, this the 18th day of February 2015.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE